**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ZAKARIA BENZAOUAL,** : | |
| : | Case No. 2:19-cv-03366 |
| **Plaintiff,** : | |
| : | Chief Judge Algenon L. Marbley |
| v. : | |
| : | Magistrate Judge Jolson |
| **OHIOHEALTH CORPORATION,** : | |
| : | |
| **Defendant.** : | |

**OPINION & ORDER**

This matter is before the Court on Defendant OhioHealth Corporation's Motion for Judgment on the Pleadings. (ECF No. 27). For the reasons set forth below, Defendant's Motion for partial judgment on the pleadings is **GRANTED.** Plaintiff's claims as specified herein are **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Plaintiff Zakaria Benzaoual ("Mr. Benzaoual") is a Muslim man of Moroccan descent. (ECF No. 1 at 8). On August 5, 2019, Mr. Benzaoual filed a pro se complaint alleging that Defendant OhioHealth Corporation ("OhioHealth") subjected him to employment-related discrimination in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.* According to the complaint, Mr. Benzaoual was the victim of discrimination on the basis of race, religion, and national origin in violation of 42 U.S.C. § 2000e-2(a)(1). (ECF No. 1 at 2). The complaint further alleges that he was the victim of "job opportunity discrimination" due to OhioHealth's failure to promote him to a management position. (*Id.* at 3, 6). OhioHealth now seeks judgment on the pleadings as to all claims based on alleged unlawful

employment practices occurring more than 300 days before Mr. Benzaoual filed a charge with the Equal Employment Opportunity Commission ("EEOC") on the theory they are time barred.

### A. Plaintiff's Complaint

The complaint contains two main sets of allegations. (*Id.* at 2). The first set, entitled "I – Director and Manager Discrimination and retaliation with HR cover ups[,]" makes allegations ranging from the time Mr. Benzaoual joined OhioHealth in 1999 as a "linen services" associate until his return to work on October 15, 2018 following a period of suspension. (*Id.* at 4-6). The second, entitled "B – Supply Chain Director Job opportunity discrimination and HR support[,]" contains allegations surrounding Mr. Benzaoual's third unsuccessful attempt to be promoted to supply and linen distribution manager in his department. (*Id.* at 6-9). In arguing for judgment on the pleadings, OhioHealth restyles the two sets as "Section One" and "Section Two," respectively. For the sake of simplicity, this Court employs the same nomenclature.

The allegations concerning unlawful employment practices in Section One of the complaint take place between 2009 and 2018. Section One alleges that OhioHealth failed to promote Mr. Benzaoual in 2009 and 2010, when he applied for a management position but was denied in both instances. (*Id.* at 4). Mr. Benzaoual also alleges that during a conversation with a director, Colleen Kennedy, in late December 2017, he questioned Ms. Kennedy's refusal to promote him to manager. (ECF No. 1 at 4). Mr. Benzaoual, however, does not appear to view the December 2017 conversation as itself an occasion on which OhioHealth improperly failed to promote him.[1]

Section One also addresses a February 2018 incident between Mr. Benzaoual and an "associate" in OhioHealth's "distribution group" named Bill Kuhn, as well as subsequent conduct

---

[1] *See* (ECF No. 1 at 6) (describing in Section Two how he "was denied for the 3rd time the position of Supply and Distribution manager by director Colleen Kennedy" and informed of that denial on January 21, 2019).

- 2 -

of OhioHealth related to that incident. (*Id.* at 4-5). Mr. Benzaoual alleges that on February 28, 2018, Mr. Kuhn, whom he describes as a "henchman" of Ms. Kennedy and a department manager named Eric Endres, "attacked" his race, religion, nationality, and American citizenship. (*Id.* at 4). Mr. Benzaoual further alleges that as a result of the incident he was suspended on March 2, 2018, before being asked, on March 6, to report to work again on March 7. (*Id.* at 4-5). When Mr. Benzaoual asked Mr. Endres for a written report of and the "policy applied" to the incident between him and Mr. Kuhn, Mr. Endres allegedly threatened him to "be qui[et] and . . . not talk to other associates about anything[,]" before referring Mr. Benzaoual to human resources personnel. (*Id.* at 5).

Section One alleges that human resources personnel attempted to "wear [him] out" and "down play the situation." (*Id.*). In particular, he alleges that he first went to Tim Roberts, who referred him to Jeffery McMurray. (ECF No. 1 at 5). Mr. McMurray allegedly failed to meet with Mr. Benzaoual. (*Id.*). Mr. Benzaoual asserts that he eventually contacted Sonya Cook, Mr. McMurray's director. (*Id.*). He appears to allege that Ms. Cook eventually chose to address his requests herself.[2] (*Id.*). According to the complaint, Ms. Cook requested from Mr. Benzaoual a list of the employees suffering similar treatment, which he provided. (*Id.*). It is unclear from the complaint whether Mr. Benzaoual ever received the information he sought. He does allege, however, that human resources "decided to support the management[,]" which perhaps suggests that he did not. (*Id.*).

Finally, Section One alleges retaliation against Mr. Benzaoual for his attempts to "escalate" his request for a written report of and the policy applied to the February 28 incident between Mr.

---

[2] As best as the court can tell, Ms. Cook is the person to whom the complaint refers as to these allegations. *See* (ECF No. 1 at 5) ("Then when I threaten that I will escalate to the next up in chain of command she decided to handle the case herself.").

Benzaoual and Mr. Kuhn. He appears to allege that once human resources "decided to support" management in that matter, and because he was "putting more pressure and escalating to higher ups[,]"a "hit" was orchestrated against him. (ECF No. 1 at 5). He alleges that on May 15, 2018, an investigator interrogated him about a tip that he planned to carry out a shooting at Riverside Methodist Hospital, which Mr. Benzaoual "completely and totally refuted . . . ." (*Id.*). Nonetheless, Mr. Benzaoual allegedly was made to turn in his work keys and badge, escorted off the premises by security, and told not to contact or approach the hospital until further notice. (*Id.*). He further alleges that "[r]ight after this," Ms. Cook sent him a "notice letter[,]" and that he met with her on at least two later occasions. (*Id.*). It appears from the complaint that Mr. Benzaoual remained suspended from work until October 15, 2018. (*Id.* at 5-6).

Section Two of the complaint is directed at the "job opportunity discrimination" Mr. Benzaoual allegedly faced on the third occasion on which OhioHealth failed to promote him to a management position. (*Id.* at 6). It is unclear when he interviewed for the position, but it is clear that the decision not to promote Mr. Benzaoual was communicated to him on January 21, 2019 by Ms. Kennedy. (ECF No. 1 at 6.). Section Two also includes *inter alia* various allegations about his efforts to obtain the reason for that decision. (*Id.* at 6-7). Section Two further alleges that other OhioHealth employees were promoted to roles as supervisors or managers as proof of job opportunity discrimination. (*Id.* at 8). The complaint alleges that white employees receive promotions over others. (*Id.* at 8).

Notably, at no point does the complaint directly allege that Mr. Benzaoual filed a charge with the EEOC or with the Ohio Civil Rights Commission ("OCRC").[3] In one instance, he merely alludes to the EEOC as his "next step" after he decided to "seek justice." (*Id.* at 8). Referenced in

---

[3] Such is true despite the fact that the "form" complaint filed by Mr. Benzaoual explicitly instructed him to attach a copy of the charge filed with the OCRC or EEOC. (ECF No. 1 at 1).

- 4 -

and attached to the complaint, however, is the EEOC's "Dismissal and Notice of Rights" ("Notice"). (*Id.* at 2, 18-19). The Notice stated that the EEOC was closing its file on Mr. Benzaoual's charge and informed him of his right to sue within ninety days. (ECF No. 1 at 18). The Notice was issued to and received by Mr. Benzaoual on May 6 and May 9, 2019, respectively. (*Id.* at 2, 18).

In addition to the Notice, Mr. Benzaoual also attached several emails between himself and employees of OhioHealth. (*Id.* at 11-17). Such emails pertain to the allegations set forth in Section One or Section two of the complaint, as the case may be.

### B. Defendant's Answer and Rule 12(c) Motion

On November 14, 2019, OhioHealth filed its answer to Mr. Benzaoual's complaint. (ECF No. 8). OhioHealth *inter alia* denied the allegations of discrimination. (*Id.*). It also stated several affirmative defenses, among them that some or all of Mr. Benzaoual's claims are barred by the applicable statute of limitation. (*Id.* at 7).

On August 18, 2020, OhioHealth filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 27). OhioHealth seeks dismissal of all claims set forth in Section One of the complaint. (*Id.* at 8). It argues that because Mr. Benzaoual filed his charge on April 29, 2019, any claims based on unlawful employment practices occurring more than 300 days prior to that date are time barred. (*Id.* at 2). Since all claims set forth in Section One are based on alleged conduct occurring more than 300 days before the charge was filed (i.e. before July 3, 2018), OhioHealth argues, such claims should be dismissed with prejudice. (*Id.* at 7-8).

OhioHealth attached two documents as exhibits to its Rule 12(c) motion. The first is a copy of the charge filed by Mr. Benzaoual with the OCRC and EEOC on April 29, 2019. (ECF No. 27-

1). The second is a copy of the EEOC's May 6, 2019 Notice, which was also referenced in and attached to Mr. Benzaoual's complaint. (ECF No. 27-2).

Mr. Benzaoual did not file any response to OhioHealth's motion. OhioHealth's motion is now ripe for review.

## II.     STANDARD OF REVIEW

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. FED. R. CIV. P. 12(c). The standard applicable to a motion for judgment on the pleadings is the same as that which applies to a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6). *E.g.*, *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019) (citing *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010)). The Court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (citations omitted). The plaintiff must "provide the grounds for its entitlement to relief" and plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations and internal quotation marks omitted). The Court, however, "'need not accept as true legal conclusions or unwarranted factual inferences.'" *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

In general, where a Rule 12(c) motion presents matters outside the pleadings and not excluded by the court, the motion must be treated as one for summary judgment. FED. R. CIV. P. 12(d). The motion is not converted to one for summary judgment, however, where the Court considers "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[] . . . .'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)

(quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment.") (citations omitted). Additionally, the Court may consider "exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1032 (S.D. Ohio 2016), *aff'd*, 714 F. App'x 565 (6th Cir. 2017) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008)).

Documents filed by pro se litigants must be "'liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted)). Courts need not, however, "abrogate basic pleading essentials in pro se suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

### III. LAW & ANALYSIS

#### A. Plaintiff's EEOC Charge

As a preliminary issue, the Court must determine whether considering the EEOC charge attached to OhioHealth's Rule 12(c) motion would convert that motion to one for summary judgment.

The general rule is that a motion for judgment on the pleadings must be treated as one for summary judgment where it presents matters outside the pleadings and not excluded by the court. FED. R. CIV. P. 12(d). Such a motion is not converted, however, where the Court considers matters of public record. *Barany-Snyder*, 539 F.3d at 332 (citation omitted); *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36 (citation omitted). This Court has observed that "[d]ocuments filed with, and

coming from, the EEOC are considered matters of public record." *Caplinger v. Uranium Disposition Servs., LLC*, No. 2:08-cv-548, 2009 WL 367407, at *2 (S.D. Ohio Feb. 11, 2009) (citations omitted). Indeed, many courts have considered EEOC documents without triggering conversion under Rule 12(d). *See, e.g.*, *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (concluding conversion of motion to dismiss was not necessary because "an EEOC charge is part of the public record"); *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 59 n.2 (D.D.C. 2019) ("Additionally, the Court can take judicial notice of Plaintiff's EEOC charge as it is a public document.") (citation omitted); *Muhammad v. N.Y.C. Transit Auth.*, 450 F. Supp. 2d 198, 204-05 (E.D.N.Y. 2006) (considering EEOC charge without converting motion to dismiss to one for summary judgment because "the charge and the agency's determination are both public records" of which court could take judicial notice). The Court may also consider "exhibits attached to a motion for judgment on the pleadings 'so long as they are referred to in the Complaint and are central to the claims contained therein.'" *Roe*, 170 F. Supp. 3d at 1032 (citation omitted).

Here, Mr. Benzaoual attached to his complaint a copy of the Notice issued to him by the EEOC on May 6, 2019. That Notice specified the EEOC charge number, stated that the EEOC was closing its file on Mr. Benzaoual's charge, and included information about his right to sue. (ECF No. 1 at 18). Accordingly, the Court may consider the Notice without converting OhioHealth's motion to one for summary judgment. *See Barany-Snyder*, 539 F.3d at 332; *see also* FED. R. CIV. P. 10(c). Mr. Benzaoual did not attach to the complaint, however, a copy of the charge he filed with the OCRC or EEOC, nor does the complaint expressly state when he filed a charge. Rather, OhioHealth attached a copy of Mr. Benzaoual's charge to its Rule 12(c) motion. (ECF No. 27-1).

The Court concludes that it may consider the charge attached to OhioHealth's motion without triggering Rule 12(d). Under an exception to the general rule, the Court may consider the

charge as a matter of public record. *See Caplinger*, No. 2:08-cv-548, 2009 WL 367407, at *2. Additionally, the Court may consider the charge because it was referred to in, and central to, the complaint. *See Roe*, 170 F. Supp. 3d at 1032; *see also Amini*, 259 F.3d at 502. The EEOC's Notice was attached to and referenced in Mr. Benzaoual's complaint. Both the Notice and the charge attached to OhioHealth's motion bear the same agency charge number. *Compare* (ECF No. 1 at 18) (showing EEOC charge number on the Notice), *with* (ECF No. 27-1 at 2) (showing that same charge number on the charge presented to the OCRC and EEOC). In that sense, the complaint refers to the charge insofar as it refers to the Notice concerning the EEOC's decision on that very same charge. The timely filing of a charge is an administrative prerequisite to Mr. Benzaoual's case before the Court, s*ee Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (citations omitted), and the charge is central to the complaint. *See Amini*, 259 F.3d at 503 ("[T]here is no question that the EEOC charge, the filing of which was a precondition to Amini bringing this suit, is central to his discrimination claim.").

The Court further notes that it has no reason to doubt the authenticity of the charge as attached to OhioHealth's motion. The charge shows that it was digitally signed by Mr. Benzaoual on April 29, 2019. (ECF No. 27-1at 2). The charge attached to OhioHealth's motion and the Notice reflect the same agency charge number. Mr. Benzaoual has alleged no facts to suggest that he filed more than one charge. Having filed no response, Mr. Benzaoual has not challenged the authenticity of the charge as attached to OhioHealth's motion.

Thus, the Court may consider the charge Mr. Benzaoual filed with the EEOC, which was attached as an exhibit to OhioHealth's motion, without converting the motion for judgment on the pleadings to one for summary judgment.

### B. Defendant's Motion for Judgment on the Pleadings

At issue is whether judgment on the pleadings is proper as to all Title VII claims contained in Section One on the grounds that they are based on alleged unlawful employment practices occurring more than 300 days before Mr. Benzaoual filed his charge of discrimination.

Under Title VII, it is unlawful for covered employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[] . . . ." 42 U.S.C. § 2000e-2(a)(1)). Generally, a plaintiff must file timely charges of employment discrimination with the EEOC and receive and act upon the EEOC's notice of the right to sue before alleging a violation of Title VII in federal court. *Nichols*, 318 F.3d at 677.

A charge is timely where it is filed with the EEOC within 180 days or, where the plaintiff "initially instituted proceedings with a State or local agency" having the requisite authority, within 300 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Nichols*, 318 F.3d at 677-78. Where discrete acts of discrimination or retaliation are alleged but no hostile work environment claim is made, a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Thus, claims of discrete acts of discrimination or retaliation are "time barred if . . . not filed within these time limits." *Morgan*, 536 U.S. at 109 (2002).

OhioHealth contends that the claims set forth in Section One of the complaint are time barred. (ECF No. 27 at 8). It asserts that Mr. Benzaoual filed his charge with the EEOC on April 29, 2019. (*Id.* at 9). It argues that alleged unlawful employment practices that occurred more than 300 days prior to that date—in other words, prior to July 3, 2018—cannot form the basis for Mr.

Benzaoual's claims under Title VII. (*Id.*). OhioHealth construes the claims in Section One of the complaint as "based on alleged conduct that pre-dates July 3, 2018." (*Id.* at 7). It summarizes the alleged "discriminatory and/or retaliatory" claims made in Section One and pre-dating July 3, 2018 as follows:

> 1) alleged denial of job opportunities in 2009, 2010, and 2017 . . .; 2) alleged "attack" on Plaintiff by management using their "henchman" in February 2018 . . .; 3) alleged suspension on March 2, 2018 . . . 4) alleged threat by supervisor Endres on March 6, 2018 . . .; 5) alleged retaliation by human resources in March through May 2018 . . .; and 6) the alleged "interrogation" and suspension of Plaintiff by OhioHealth's "lead investigator" on or about May 15, 2018 . . . .

(*Id.*). OhioHealth also asserts that although "Plaintiff references that he returned to work on October 15, 2018 in Section One," all of the alleged unlawful employment practices in Section One occurred more than 300 days before Mr. Benzaoual filed his charge. (*Id.* at 7-8). Therefore, OhioHealth concludes, the claims set forth in Section are time barred and must be dismissed. (ECF No. 27 at 8).

Here, the charge attached to OhioHealth's motion appears to have been filed with both the OCRC and EEOC. (ECF No. 27-1 at 2). Thus, the 300-day statute of limitations is applicable. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Nichols*, 318 F.3d at 678 (observing that "OCRC is an authorized state agency under 42 U.S.C. § 2000e-5(e)(1)"). The charge was digitally signed by Mr. Benzaoual on April 29, 2019. (ECF No. 27-1 at 2). That date appears to be the earliest on which Mr. Benzaoual could have filed his charge, as Mr. Benzaoual alleges no other actions that could be construed as a charge filing in this case. Thus, July 3, 2018 marks 300 days before the charge filing date.

Whether the claims contained in Section One are based on alleged unlawful employment practices occurring prior to July 3, 2018 may depend on whether Section One includes a claim of hostile work environment or only claims of discrete discriminatory or retaliatory acts.

As stated above, claims of discrete acts of discrimination or retaliation are "time barred if . . . not filed within" the applicable time limit. *Morgan*, 536 U.S. at 109. In contrast, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*, 536 U.S. at 117. Where a hostile environment claim is made, it is irrelevant "that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117.

Here, OhioHealth's motion fails to address directly whether Mr. Benzaoual makes a hostile work environment claim or claims only discrete discriminatory or retaliatory acts. The complaint does not clearly indicate an intent to bring a hostile work environment claim here. Nor does Mr. Benzaoual's filed charge indicate as much.[4] Regardless of whether Mr. Benzaoual attempts to bring a claim of hostile work environment or claims of discrete retaliatory or discriminatory acts, however, the claims in Section One are time barred.

To the extent the claims in Section One are all properly characterized as being based on discrete discriminatory or retaliatory acts, they clearly occurred prior to July 3, 2018. Mr. Benzaoual alleges that OhioHealth failed to promote him in 2009 and 2010. The alleged attack on Mr. Benzaoual's race, religion, and nationality by Ms. Kennedy and Mr. Endres' "henchman," Mr. Kuhn, is said to have occurred on February 28, 2018. Mr. Benzaoual's alleged suspension as a

---

[4] The charge's particulars state in full: "I began my employment with Respondent on or about November 1, 1999. My current position is Team Lead Supply Chain. During my employment, I was subject to harassment. I was suspended twice. I complained to the Respondent about discrimination. Subsequently, I applied for a promotion to the Manager of Supply and Linen Distribution position. I was not hired for the position. I believe that I was discriminated against because of my national origin, Arab and Moroccan, my color, light-skinned, my religion, Islam, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." (ECF No. 27-1 at 2).

result of the incident with Mr. Kuhn was communicated to Mr. Benzaoual on March 2, 2018. Mr. Endres' alleged threat against Mr. Benzaoual appears to fall on March 6, 2018. (ECF No. 1 at 4-5). The alleged resistance of human resource personnel to Mr. Benzaoual's attempts to obtain a written incident report of and the policy applied to the incident appears to have taken place somewhere between March 6 and May 15 of 2018. (ECF No. 1 at 5). The alleged investigation and suspension of Mr. Benzaoual also occurred before July 3, 2018. Mr. Benzaoual alleges that on May 15 of that year, he was questioned by an investigator before being made to turn in his work keys and badge and escorted off the premises with instructions not to return until further notice. He further alleges that "[r]ight after this," he received a "notice letter" from Ms. Cook. (ECF No. 1 at 5). Such allegations indicate that Mr. Benzaoual was informed of his suspension either on May 15 itself or very soon after that date. Even construing the complaint liberally and in a light most favorable to Mr. Benzaoual, the Court is unable to conclude that his suspension occurred as late as July 3, 2018. And although his suspension remained in place until October 15, 2018, the suspension itself occurred on or very soon after May 15. *See Amini*, 259 F.3d at 499 (reaffirming the "practice of running the Title VII . . . limitations provisions from the date on which the alleged discriminatory act . . . was communicated to the plaintiff"); *see also Morgan*, 536 U.S. at 110 ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").

To the extent that Section One can be liberally construed as asserting a hostile work environment claim, none of the acts that would contribute to such a claim occurred within the relevant filing period. *See Morgan*, 536 U.S. at 117 ("*Provided that an act contributing to the claim occurs within the filing period*, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.") (italics added); *see also Neview v. D.O.C. Optics Corp.*, 382 F. App'x 451, 456 n.8 (6th Cir. 2010) (noting that a plaintiff "must

allege a non-discrete action that properly forms the basis of a hostile work environment claim under Title VIII within the applicable 300-day period in order for her claim to be considered timely") (unpublished opinion). OhioHealth's alleged failures to promote Mr. Benzaoual in 2009 and 2010 are discrete acts. *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify.") (italics added); *see also Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 994 (6th Cir. 2009) ("The failure to promote an employee or select him for a training program is a discrete act that cannot alone amount to a hostile work environment."). The remaining acts alleged in Section One that would contribute to a claim of hostile work environment all occurred in 2018 between February 28 and May 15 or very soon after May 15, and certainly not as late as July 3. The Court discerns no other allegations in the complaint that would contribute to a hostile work environment claim such that component acts could fall both within and without the filing period.

Thus, each of the alleged unlawful employment actions in Section One occurred more than 300 days prior to Mr. Benzaoual's charge filing and are therefore time barred. *See* 42 U.S.C. § 2000e-5(e)(1).

Accordingly, judgment on the pleadings is proper as to the following Title VII claims set forth in Section One: (1) OhioHealth's alleged failures to promote Mr. Benzaoual in 2009 and 2010;[5] (2) the alleged attack against Mr. Benzaoual on the basis of race, religion, and national origin by a "henchman" of OhioHealth management on February 28, 2018; (3) Mr. Endres' alleged suspension of Mr. Benzaoual on or about March 2, 2018; (4) Mr. Endres' alleged threat against Mr. Benzaoual on or about March 6, 2018; (5) human resource personnel's alleged resistance to

---

[5] In the event Mr. Benzaoual considers his December 2017 conversation with Ms. Kennedy, (ECF No. 1 at 4), a separate instance of failure to promote, that claim would also be time barred and subject to dismissal for purposes of this Order.

Mr. Benzaoual's efforts to obtain the report and policy between approximately March 6 and May 15 of 2018; (6) the alleged interrogation of Mr. Benzaoual on or about May 15, 2018; and (7) the alleged suspension of Mr. Benzaoual on or about May 15, 2018.

The Court notes, however, that OhioHealth did not move for, nor does the Court grant here, judgment on the pleadings as to the claims set forth in Section Two of the complaint.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that the Title VII claims of unlawful employment practices set forth in Section One of Plaintiff Zakaria Benzaoual's complaint are time barred. Defendant OhioHealth Corporation's Motion for Judgment on the Pleadings (ECF No. 27) is therefore **GRANTED.** Plaintiff's claims set forth in Section One of the complaint are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
    **ALGENON L. MARBLEY**
    **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  December 28, 2020**