**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ZAKARIA BENZAOUAL,** | : | |
| | : | **Case No. 2:19-cv-3366** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Jolson** |
| **OHIOHEALTH CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on several motions. Plaintiff Zakaria Benzaoual filed a Motion for Reconsideration (ECF No. 47) of this Court's December 28, 2020 Opinion and Order, which granted Defendant's Motion for Partial Judgement on the Pleadings (ECF No. 44).

Additionally, Defendant OhioHealth Corporation ("OhioHealth" or the "Company") filed a Motion for Summary Judgment. (ECF No. 39). This motion precipitated a wave of additional responses, including: a response in opposition by Mr. Benzaoual (ECF No. 41); a second response in opposition by Mr. Benzaoual (ECF No. 42); a reply by OhioHealth (ECF No. 45); and a response to the reply by Mr. Benzaoual (ECF No. 48).

OhioHealth moved to strike Mr. Benzaoual's second response in opposition. (ECF No. 43). Mr. Benzaoual responded in opposition to the motion to strike (ECF No. 46), and OhioHealth replied (ECF NO. 49). Mr. Benzaoual then filed a supplemental memorandum opposing OhioHealth's motion to strike. (ECF No. 51). OhioHealth has also moved to strike the supplemental memorandum. (ECF No. 53). Finally, OhioHealth moves to strike Mr. Benzaoual's response to OhioHealth's reply in support of summary judgment. (ECF No. 50).

For the reasons articulated below, the Court **DENIES** Mr. Benzaoual's motion for reconsideration, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's second response in opposition, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's supplemental memorandum, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's response to OhioHealth's reply, and **GRANTS** OhioHealth's motion for summary judgment.

## I. BACKGROUND

### A. Facts

Mr. Benzaoual is a Muslim man of Moroccan descent. (ECF No. 1 at 8). On August 5, 2019, Mr. Benzaoual filed a pro se Complaint alleging that OhioHealth subjected him to employment-related discrimination in violation of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e. According to the Complaint, Mr. Benzaoual was the victim of discrimination on the basis of race, religion, and national origin. (ECF No. 1 at 2). The Complaint further alleges that he was the victim of "job opportunity discrimination" due to OhioHealth's failure to promote him to a management position. (*Id.* at 3, 6).

The Complaint contains two main sets of allegations. (*Id.* at 2). The first set, entitled "I – Director and Manager Discrimination and retaliation with HR cover ups[,]" makes allegations ranging from 1999, when Mr. Benzaoual joined OhioHealth as a "linen services" associate, until October 15, 2018, when he returned to work after a period of suspension. (*Id.* at 4–6). The second, entitled "B – Supply Chain Director Job opportunity discrimination and HR support[,]" contains allegations surrounding Mr. Benzaoual's third unsuccessful attempt to be promoted to supply and linen distribution manager in his department. (*Id.* at 6–9). For the sake of simplicity, this Court restyles the two sets as "Section One" and "Section Two," respectively.

The allegations in Section One of the Complaint take place between 2009 and 2018. Section One alleges that OhioHealth failed to promote Mr. Benzaoual in 2009 and 2010, when he applied for a management position twice but was denied both times. (*Id.* at 4). Mr. Benzaoual also describes his December 2017 conversation with a director, Colleen Kennedy, during which he questioned Ms. Kennedy's refusal to promote him to manager. (*Id.*). Mr. Benzaoual, however, does not appear to view the December 2017 conversation as itself an occasion where OhioHealth improperly failed to promote him.[1]

Section One also addresses a February 2018 incident between Mr. Benzaoual and an "associate" in OhioHealth's "distribution group" named Bill Kuhn, as well as subsequent conduct related to that incident. (*Id.* at 4–5). Mr. Benzaoual alleges that Mr. Kuhn, whom he describes as a "henchman" of Ms. Kennedy, and department manager Eric Endres "attacked" his race, religion, nationality, and American citizenship on February 28, 2018. (*Id.* at 4). Mr. Benzaoual further alleges that he was suspended two days later because of this incident, before being asked to report to work again on March 7. (*Id.* at 4–5). When Mr. Benzaoual asked Mr. Endres for a written report of and the "policy applied" to the incident between him and Mr. Kuhn, Mr. Endres allegedly threatened him to "be qui[et] and . . . not talk to other associates about anything[,]" before referring Mr. Benzaoual to human resources personnel. *(Id.* at 5).

Section One alleges that human resources personnel attempted to "wear [him] out" and "down play the situation." (*Id.*). In particular, Mr. Benzaoual alleges that he first went to Tim

---

[1] *See* ECF No. 1 at 6 (describing in Section Two that Mr. Benzaoual "was denied for the 3rd time the position of Supply Distribution manager by director Colleen Kennedy" and that he was informed of that denial on January 21, 2019).

Roberts, who referred him to Jeffery McMurray.[2] (*Id.* at 5). Mr. McMurray allegedly failed to meet with Mr. Benzaoual. (*Id.*). Mr. Benzaoual asserts that he eventually contacted Sonya Cook, Mr. McMurray's director. (*Id.*). He appears to allege that Ms. Cook eventually chose to address his requests herself.[3] (*Id.*). According to the Complaint, Ms. Cook requested from Mr. Benzaoual a list of the employees suffering similar treatment, which he provided. (*Id.*). It is unclear from the Complaint whether Mr. Benzaoual ever received the information he sought. He does allege, however, that human resources "decided to support the management[,]"perhaps suggesting that he did not. (*Id.*).

Finally, Section One alleges retaliation against Mr. Benzaoual for his attempts to "escalate" his request for a written report of and the policy applied to the February 28 incident between Mr. Benzaoual and Mr. Kuhn. He appears to allege that once human resources "decided to support" management in that matter, and because he was "putting more pressure and escalating to higher ups[,]"a "hit" was orchestrated against him. (*Id.* at 5). Mr. Benzaoual alleges that an investigator interrogated him about a tip that Mr. Benzaoual planned to carry out a shooting at Riverside Methodist Hospital, which he "completely and totally refuted. . . ." (*Id.*). Nonetheless, Mr. Benzaoual allegedly was made to turn in his work keys and badge, escorted off the premises by security, and told not to contact or approach the hospital until further notice. (*Id.*). Mr. Benzaoual further alleges that "[r]ight after this" incident, Ms. Cook sent him a "notice letter[,]" and that he

---

[2] According to the Complaint, Mr. Roberts and Mr. McMurray are human resources personnel and/or employed by the counseling department. (*See id.* at 5).

[3] As best as the Court can tell, Ms. Cook is the person to whom the Complaint refers as to these allegations. (*See* ECF No. 1 at 5) ("Then when I threaten that I will escalate to the next up in chain of command she decided to handle the case herself.").

met with her on at least two later occasions. (*Id.*). It appears from the Complaint that Mr. Benzaoual remained suspended from work until October 15, 2018. (*Id.* at 5–6).

Section Two of the Complaint centers on the "job opportunity discrimination" Mr. Benzaoual allegedly faced the third time OhioHealth failed to promote him to a management position, when he applied for the Manager Supply Chain position. (*Id.* at 6). Ms. Kennedy interviewed Mr. Benzaoual for the position but declined to hire him. (Kennedy Decl. ¶ 11, ECF No. 39-6). She communicated her decision not to promote Mr. Benzaoual on January 21, 2019. (ECF No. 1 at 6.).

Section Two also includes various allegations about Mr. Benzaoual's efforts to obtain the reason for that decision. (*Id.* at 6–7). As proof of job opportunity discrimination, Mr. Benzaoual alleges that other OhioHealth employees were promoted to roles as supervisors or managers: "Under director Colleen Kennedy, if you were a white Caucasian you enjoy all of the benefits even with no related education nor work experience . . . In my case, being a Muslim, Arab and Moroccan I get punished by [being denied] any sort of promotion or better job opportunities." (*Id.* at 8).

Notably, Mr. Benzaoual does not directly allege that he filed a charge with the Equal Employment Opportunity Commission ("EEOC") or with the Ohio Civil Rights Commission ("OCRC"). In one instance, he merely alludes to the EEOC as his "next step" after he decided to "seek justice." (Id. at 8). The EEOC's "Dismissal and Notice of Rights" ("Notice"), however, is attached to and referenced in the Complaint. (*Id.* at 2, 18–19). The Notice states that the EEOC was closing its file on Mr. Benzaoual's charge because it was "unable to conclude that the information obtained establishes violations of the statutes" and informs him of his right to sue within ninety days. (*Id.* at 18). The Notice was issued to and received by Mr. Benzaoual on May 6 and May 9, 2019, respectively. (*Id.* at 2, 18).

## B. Procedural History

On August 18, 2020, OhioHealth filed a Motion for Judgment on the Pleadings. (ECF No. 27). Mr. Benzaoual did not respond. This Court granted the motion in part on December 28, 2020. (ECF No. 44). Specifically, the Court ruled that the Title VII claims set forth in Section One of the Complaint were time barred and therefore dismissed with prejudice. (*Id.*). On January 6, 2021, Mr. Benzaoual filed a Reply to Court's Granting Defendant Partial Judgment on the Pleadings, which the Court has construed as a motion for reconsideration. (ECF No. 47). OhioHealth responded in opposition on January 28, 2021 (ECF No. 52), and the motion is now ripe for review.

Additionally, OhioHealth filed a Motion for Summary Judgment on November 20, 2020. (ECF No. 39). Mr. Benzaoual filed a Response in Opposition on December 18, 2020 ("First Opposition"). (ECF No. 41).[4] Three days later, on December 21, 2020, Mr. Benzaoual filed an additional Opposition ("Second Opposition"). (ECF No. 42). OhioHealth replied on January 4, 2021 (ECF No. 45), and Mr. Benzaoual filed a Response to the Reply on January 12, 2021 ("Third Opposition") (ECF No. 48).

OhioHealth filed a Motion to Strike ("First Motion to Strike") to the Second Opposition on December 23, 2020. (ECF No. 43). Mr. Benzaoual timely responded in opposition (ECF No. 46), and OhioHealth replied (ECF No. 49). Mr. Benzaoual then filed an Answer to OhioHealth Corporation's Reply on January 25, 2021 ("Sur-Reply"). (ECF No. 51). OhioHealth moved to strike the Sur-Reply on February 2, 2021 (ECF No. 53), but Mr. Benzaoual did not respond. Finally, OhioHealth also moved to strike the Third Opposition

---

[4] Plaintiff's Response to OhioHealth's Motion for Summary Judgment was due on December 11, 2020. S.D. Ohio Civ. R. 7.2(a)(2).

## II. MOTION FOR RECONSIDERATION

### A. Standard of Review

The Federal Rules do not expressly provide for "motions for reconsideration." *Doyle v. Pollit*, No. 2:08-CV-761, 2010 WL 658652, at *1 (S.D. Ohio Feb. 22, 2010) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)). Nevertheless, "[d]istrict courts have authority both under common law and [Federal Rule of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Id.* Generally, motions for reconsideration serve a limited function and are warranted only when there is: (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest justice. *Id.* These limitations are in place because "[m]otions for reconsideration are not intended to re-litigate issues previously considered by the Court or to present evidence that could have been raised earlier." *Doyle*, 2010 WL 658652, at * 1 (citing *J.P. v. Taft,* No. C2–04–692, 2006 U.S. Dist. LEXIS 14595, 2006 WL 689091, at *13 (S.D. Ohio Mar.15, 2006)).

Generally, the pleadings of pro se litigants are held to less stringent standards than pleadings drafted by lawyers. *Ruhl v. Brown*, No. 2:13-CV-00716, 2015 WL 5117951, at *2 (S.D. Ohio Sept. 1, 2015). This is because the Sixth Circuit has determined that "[t]he rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits." *Brown v. Matauszak*, 415 F. App'x 608, 616 (6th Cir. 2011) (citing *Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984)). A plaintiff's status as a pro se litigant, however, "does not discharge him from adhering to the requirements of the Federal Rules of Civil Procedure nor the Local Rules for this District." *Despot v. Am. Income Life Ins. Co.*, No. 1:10-CV-

932, 2012 WL 787387, at *1 (S.D. Ohio Mar. 9, 2012); *Gallant v. Holdren*, No. 1:15-CV-00383, 2018 WL 919875, at *2 (S.D. Ohio Feb. 15, 2018), *report and recommendation adopted*, No. 1:16CV383, 2018 WL 1535912 (S.D. Ohio Mar. 29, 2018).

## B. Law and Analysis

In its December 28, 2020 Opinion and Order, this Court granted OhioHealth's motion for judgment on the pleadings. (ECF No. 44). The Court found that Mr. Benzaoual's Title VII claims in Section One of the Complaint were time-barred under Title VII. (*Id.* at 10). Under Title VII, plaintiffs must file timely charges of employment discrimination with the EEOC and act upon the EEOC's notice of the right to sue before alleging a violation of Title VII in federal court. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003). A charge is timely when it is filed with the EEOC within 180 days or, when the plaintiff "initially instituted proceedings with a State or local agency" having the requisite authority, within 300 days after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1); *Nichols*, 318 F.3d at 677–78.

Because Mr. Benzaoual filed charges with both the OCRC and the EEOC, the Court found that the 300-day statute of limitations applied. (ECF No. 44 at 11). OhioHealth submitted evidence that Mr. Benzaoual digitally signed his charge on April 29, 2019, a date which "appears to be the earliest on which Mr. Benzaoual could have filed his charge, as Mr. Benzaoual alleges no other actions that could be construed as a charge filing in this case." (*Id.*). As such, any employment practices occurring before July 3, 2018 could not give rise to a timely claim of unlawful employment practice. (*Id.*). The Court concluded that neither Mr. Benzaoual's claims for discrete discriminatory or retaliatory acts, nor any liberally construed hostile work environment claim, occurred within the relevant filing period and were therefore time-barred.

Mr. Benzaoual's argument for reconsideration centers on his request that the Court correct the date on which he filed his charge with the EEOC. (ECF No. 47 at 1–2). In support, he includes three emails, all of which were exchanged between the EEOC or its staff members and Mr. Benzaoual.

The first, dated March 12, 2019, is entitled "Email Verification Code." (*Id.* at 5). The body of the email reads in total: "Please use code 606721 to verify your email." (*Id.*).

The second, dated March 15, 2019, is entitled "Reminder – Schedule an Interview" and was issued by the EEOC. (*Id.* at 6). This email acknowledges Mr. Benzaoual's "inquiry" about "alleged employment discrimination by OHIOHEALTH to EEOC." (*Id.*). The email highlights that, "You must schedule an appointment through the calendar in order to complete the inquiry process and be interviewed by EEOC staff. If you do not schedule an interview, we will not take any action on your inquiry." (*Id.*). The email also states:

> ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION.
>
> A charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination. It requests EEOC to take remedial action. The laws enforced by EEOC, except the Equal Pay Act, require you to file a charge before you can file a lawsuit for unlawful discrimination. There are strict time limits for filing a charge.

(*Id.*) (emphases in original).

The third, dated April 8, 2019, was written by Mr. Benzaoual, and sent to Benjamin Arnold, an EEOC employee. (*Id.* at 7). In the email, Mr. Benzaoual thanked Mr. Arnold for his time and indicated that, "per our conversation this morning, I will be forwarding to you the email communications that took place during my 1st and 2nd suspensions to have an idea and full picture of the ordeal of descrimination [sic] and racism that I had to go through . . . [and] the other emails

pertaining to my case about the sabotage exercised by our department hiring director Colleen Kennedy." (*Id.*).

Mr. Benzaoual does not contend that this evidence was newly discovered. Instead, he appears to have had access to these emails when OhioHealth moved for judgment on the pleadings: the emails were either sent from or received by one of Mr. Benzaoual's two personal email accounts, and they were exchanged prior to August 18, 2020, the date on which OhioHealth filed its Motion for Judgment on the Pleadings. Despite his having access to the emails, Mr. Benzaoual did not respond in opposition to OhioHealth's motion, nor did he otherwise call attention to these emails until after this Court docketed its Opinion and Order granting judgment on the pleadings. Mr. Benzaoual's initial silence on this matter stands in contrast with his otherwise active participation in the pleadings of this suit.

Even if Mr. Benzaoual had recently obtained evidence of his earlier conversations with the EEOC regarding his charge, however, the emails he provided in his Motion for Reconsideration would likely be insufficient to warrant reconsideration. Under Title VII, the EEOC charge must "be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires." *See* 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.12. Appellate courts are split as to whether an EEOC intake questionnaire may be viewed as a "charge" for purposes of satisfying the statutory requirement. *Compare, e.g.*, *Diez v. Minn. Min. & Mfg. Co.*, 88 F.3d 672, 675 (8th Cir. 1996) (holding that questionnaires do not satisfy statutory requirements for a Title VII charge because they are not verified and do not trigger notification to the employer that a charge has been lodged), *with Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78–79 (5th Cir. 1982) (finding the intake questionnaire sufficient to constitute a charge where it is so treated by both the complainant and the EEOC, along with other factors). The Sixth Circuit has taken the

latter position, requiring "a formal charge, not an inquiry or complaint." *Dorn v. Gen. Motors*, 131 F. App'x 462, 470 n.7 (6th Cir. 2005).[5]

Taking on a similar circuit split, the Supreme Court concluded that an intake questionnaire submitted to the EEOC may constitute a charge of age discrimination. *Federal Exp. Corp. v. Holowecki*, 552 U.S. 389, 410–02 (2008). In *Holowecki*, the Court reasoned that an intake form containing the employer's name and the allegation, together with an attached six-page affidavit, could be viewed as a "charge" under the Age Discrimination in Employment Act ("ADEA") if it could be reasonably construed as "a request for the agency to take remedial action to protect the employee's rights." *Id.* Although the precise requirements may differ to meet the Title VI "charge" definition, here Mr. Benzaoual did not submit the questionnaire or other evidence of information he provided to the EEOC. The emails he submitted, even if they had been recently discovered, do not indicate what specific information he provided to the EEOC. Moreover, the second email specifically indicates that the EEOC "will not take any action on your inquiry," unless Mr. Benzaoual scheduled an interview. Although it does appear Mr. Benzaoual later had a conversation with an EEOC staff member, it is nearly impossible for the Court to determine if his communications met the definition of a charge under Title VII without additional evidence.

Accordingly, Mr. Benzaoual's Motion for Reconsideration is **DENIED**. The Court notes, however, that OhioHealth did not move for, nor did the Court previously grant, judgment on the pleadings as to the claims set forth in Section Two of the Complaint. The Court will analyze those claims in Section IV below.

---

[5] Although this ruling did not specifically analyze Title VII "charge" requirements, "the filing provisions of the ADEA and Title VII are virtually *in haec verba*, the former having been patterned after the latter." *EEOC v. Com. Office Prods. Co.*, 486 U.S. 107, 123–24 (1988) (quotation omitted). For this reason, courts often find cases construing the ADEA's filing requirements to be instructive on Title VII's filing regime. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1164 n.6 (10th Cir. 2007).

### III. MOTIONS TO STRIKE

OhioHealth has moved to strike three of Mr. Benzaoual's pleadings, two of which respond to OhioHealth's Motion for Summary Judgment, and one of which relates to his supplemental response to OhioHealth's first motion to strike. The Court considers each of these motions in turn.

#### A. Standard of Review

The Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Additionally, the Court has the inherent power to control its docket, which includes the power to strike a document or a portion of a document. *Olagues v. Steinour*, No. 2:17-CV-49, 2018 WL 300377, at *1 (S.D. Ohio Jan. 4, 2018). Though motions to strike are disfavored when "they serve only to delay," courts may grant motions to dismiss when they expedite cases by removing "unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). In particular, "courts have liberal discretion to strike inappropriate filings." *Sheets v. U.S. Bank, Nat'l Assoc.*, No. 14-CV-10837, 2014 WL 5499382, at *2 (E.D. Mich. Oct. 30, 2014); *see also Kirk v. Muskingum Cnty. Ohio*, No. CIV. A. 2:09-CV-0583, 2010 WL 3719286, at *2 (S.D. Ohio May 24, 2010), *report and recommendation adopted as modified*, No. 2:09-CV-0583, 2010 WL 3702581 (S.D. Ohio Sept. 17, 2010) (granting defendants' motion to strike because the amended complaint was filed untimely); *Jones v. Ahmed*, No. 1:14-cv-00964, 2019 WL 1433853, at *1 (S.D. Ohio Mar. 31, 2019) (upholding the magistrate's decision to strike the plaintiff's second response in opposition to the defendant's motion for summary judgment because it was improperly filed).

As noted above, this Court reviews inappropriate filings by pro se litigants under a less stringent standard. At times, the Court permits pro se filings that do not comport with the local rules, particularly when they deviate in minor ways. *Ruhl*, 2015 WL 5117951, at *2 (denying

motion to strike where a pro se plaintiff presented a non-frivolous argument, despite exceeding the local rules' page number maximum). At other times, however, this Court strikes inappropriate pleadings, especially those that digress substantially from the local rules or the Federal Rules of Civil Procedure. *Crosky v. Ohio Dep't of Rehab. & Corr.*, No. 2:09-cv-00400, 2010 WL 3061816, at *1–2 (S.D. Ohio Aug. 3, 2010) (upholding the magistrate's decision to strike a pro se plaintiff's reply to an answer because it was "not among the pleadings listed in Rule 7(a)").

## B. Law and Analysis

### 1. Mr. Benzaoual's Sur-Reply to the First Motion to Strike

When OhioHealth moved to strike the Second Opposition, Mr. Benzaoual responded in opposition, and OhioHealth replied. (ECF Nos. 43, 46, 49). Mr. Benzaoual then filed a Sur-Reply. (ECF No. 51). OhioHealth moves to strike the Sur-Reply because Mr. Benzaoual did not seek leave of the Court or show good cause before filing it.

This Court's Local Rules do not permit a party to file a sur-reply without leave of the Court and upon a showing of good cause. *See* S.D. Ohio Civ. R. 7.2(a)(2). Specifically, Local Rule 7.2(a)(2) permits the filing of one opposing memorandum and one reply memorandum only: "No additional memoranda beyond those enumerated are permitted except upon leave of court for good cause shown." *Id.*

Mr. Benzaoual presents four "good causes" for filing his Sur-Reply without leave of the Court. (ECF No. 51 at 2). Specifically, he contends that OhioHealth: (1) is "still hindering and denying access to evidentiary materials and documents;" (2) "altered, falsified and tampered with documents and reports" it submitted with its motion for summary judgment; (3) "uses some of the evidentiary materials to ambush Plaintiff;" and (4) "corruptly uses evidence in intent [sic] to hinder court procedure and influence the outcome of this case." (*Id.*). None of these offered justifications,

however, explains why Mr. Benzaoual needed to file an additional reply three weeks after his initial response without permission from the Court. Accordingly, the Court recognizes the Sur-Reply as an inappropriate filing and will disregard its contents from its analysis. OhioHealth's Motion to Strike the Sur-Reply [#51] is therefore **GRANTED IN PART**.

## *2. Mr. Benzaoual's Second Opposition to the MSJ*

As previously described, Mr. Benzaoual filed a Second Opposition to OhioHealth's Motion for Summary Judgment three days after filing his First Opposition. (ECF Nos. 41, 42). OhioHealth moved to strike the Second Opposition, arguing it too contravenes Local Rule 7.2 because Mr. Benzaoual did not seek the Court's permission to file it before doing so. (ECF No. 43).

Mr. Benzaoual's First Opposition consists of four main sections. First, he explains why OhioHealth's presentation of the facts are "distorted." (ECF No. 41 at 2-4). Second, he sets forth the "true facts." (*Id.* at 5–13). Third, he provides answers to some of the exhibits OhioHealth attached to its motion for summary judgment. (*Id.* at 14–19). Last, Mr. Benzaoual attaches his annual evaluations by OhioHealth as a supplement. (*Id.* at 22–92).

In the Second Opposition, which is labeled as an "Annex," Mr. Benzaoual asks the Court to deny the First Motion to Strike and to "hold Defendant accountable for the following: Poor treatment; Retaliation for protected activities; Terrible management; Not following its own policies; Mismatched performance and performance reviews, Wrongful suspensions . . . , not responding properly to an EEOC Charge; False accusations and most importantly Defamation of Character . . . ." (ECF No. 42 at 1–2). In Support, Mr. Benzaoual alleges that OhioHealth "did not cooperate and made it difficult for the EEOC to investigate" and "also made it difficult and objected to answer Discovery interrogatories and release of documents." (*Id.*). Mr. Benzaoual asserts that this is "overwhelming proof of cover up." (*Id.* at 2).

Like the Sur-Reply, the Second Opposition does not explain why Mr. Benzaoual filed a successive pleading without first seeking leave from this Court as the Local Rules require. In comparing the First Opposition and the Second Opposition, the Court likewise cannot discern any good cause for an additional response. The Court will therefore disregard the Second Opposition. OhioHealth's motion [# 43] is therefore **GRANTED IN PART.**

### 3. Mr. Benzaoual's Third Opposition to the MSJ

Mr. Benzaoual also filed a Response to OhioHealth's Reply to its Motion for Summary Judgment ("Third Opposition"). (ECF No. 48). OhioHealth moves to strike the Third Opposition as well. (ECF No. 50).

In the Third Opposition, Mr. Benzaoual again asks the Court not to consider OhioHealth's Motion for Summary Judgment. (ECF No. 48 at 3). He also explains OhioHealth's arguments that he has not properly supported his opposition to the motion for summary judgment. (*Id.* at 3–14). As in the Second Opposition, however, he did not seek the Court's permission to file an additional response, nor did he provide any explanation as to why he has good cause for raising these arguments now. Accordingly, this Court **GRANTS IN PART** OhioHealth's motion to strike [#50] and will disregard Mr. Benzaoual's Third Opposition.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012). The Court's purpose in considering a summary judgment motion is not "to weigh the evidence and determine the truth of the matter" but to "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists if the Court finds a jury could return

a verdict, based on "sufficient evidence," in favor of the nonmoving party; evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment shoulders the initial burden of presenting the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Anderson,* 477 U.S. at 251.

**B. Law and Analysis**

The claims in Section Two of Mr. Benzaoual's Complaint remain before this Court, despite its previous ruling for judgment on the pleadings, in favor of OhioHealth, on the claims in Section One. In Section Two, Mr. Benzaoual claims that OhioHealth discriminated against him on the basis of his religion, race, and national origin when Ms. Kennedy decided not to promote him to the Manager Supply Chain position in January 2019. (ECF No. 1 at 8). OhioHealth argues that Mr. Benzaoual's claims fail as a matter of law because: 1) he did not exhaust administrative remedies for his race discrimination claim; and 2) he cannot establish a prima facie case for any of his discrimination claims.

*1. Administrative Exhaustion*

Pursuant to the provisions of Title VII, a plaintiff must file a charge with the EEOC before filing a complaint in federal court. *Nichols*, 318 F.3d at 677 (quoting *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989)); 42 U.S.C. § 2000e-(f)(1). In order to pursue a federal court claim for race discrimination, the plaintiff's charge must either directly make a race discrimination claim, or it must contain allegations that could be "reasonably expected" to prompt the EEOC to investigate a race discrimination claim. *Carter v. Delaware Cnty. Bd. of Comm'rs*, 2009 544907, at * 7 (S.D. Ohio Mar. 3, 2009) (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)). ¡To prompt the EEOC's investigation for an uncharged claim, the Sixth Circuit maintains that a plaintiff must allege facts in either in the charge or in a document attached to the charge that would prompt the EEOC's investigation. *Id.* Failure to exhaust administrative remedies is an "appropriate basis for dismissal" of a Title VII claim. *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002).

Accordingly, courts in the Sixth Circuit look to the charges the plaintiff explicitly files (i.e., which "discrimination based on" boxes the plaintiff checks on the charge form) and to the facts the plaintiff includes on the form or in any accompanying documents. When a plaintiff files a charge asserting facts that are only related to race discrimination, for example, the plaintiff does not exhaust the administrative requirement for a sex discrimination claim, unless such a claim is supported by additional factual allegations. *See Dixon*, 392 F.3d at 217 (concluding plaintiff's age discrimination claim did not exhaust the administrative requirement because the charge filed with the EEOC only alleged facts relating to race discrimination, and plaintiff only checked the "race" and "other" boxes to indicate the cause of the discrimination on the charge form); *see also Murphy v. McDonald's Corp.*, No. 2:06-1020, 2008 WL 4332409, at *3–4 (S.D. Ohio Sept. 17, 2008) (granting summary judgment on the plaintiff's claim for gender discrimination because she only marked the "race discrimination" box on the charge form and her affidavit gave notice only of her race discrimination claim).

It is less clear, however, whether a plaintiff who brings a claim for color discrimination  or national origin discrimination should trigger the EEOC's investigation of a race-based claim. The Sixth Circuit has acknowledged that district courts may "conclude[] that an investigation could reasonably include discrimination based on race and national origin" even when only one of those two charges is alleged in an EEOC charge because a plaintiff's race and national origin "are closely related and may . . . both contribute[] to . . . discrimination [the plaintiff] suffered." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991), *overruled on other grounds*. *Contra Carter*, 2009 WL 544907, at *7 (granting summary judgment on plaintiff's claims of color discrimination because plaintiff included only charges for race discrimination in his EEOC charge).

Courts must liberally construe EEOC charges filed pro se by lay complainants. *Ang*, 932 F.2d at 547; *see also Davis*, 157 F.3d at 463. Applying this more liberal standard, this Court finds that Mr. Benzaoual's race discrimination claim is not precluded due to failure to exhaust administrative requirements. On his EEOC charge form, Mr. Benzaoual checked boxes indicating he experienced discrimination based on "color," "religion," "national origin," and "retaliation." (Benzaoual Dep. Ex. 1, ECF No. 39-1). Although he did not mark the box to indicate race-based discrimination, he articulated the bases for his claims as follows: "I believe I was discriminated against because of my national origin, Arab and Moroccan, my color, light-skinned, my religion, Islam, and in relation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. (*Id.*). The Court finds that Mr. Benzaoual's race is closely related to his Arab and Moroccan ancestry and the issue of his skin color, such that all three may have contributed to any discrimination he suffered. Since Mr. Benzaoual is not represented by counsel, his failure to raise race discrimination in his EEOC charge is not a fatal flaw. The Court therefore declines to dismiss his race claim based on failure to exhaust administrative requirements.

### 2. Prima Facie Case of Discrimination

It is a violation of Title VII to fail to promote an employee because of his membership in a protected class. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). To establish a prima facie case for discriminatory failure to promote, Mr. Benzaoual must demonstrate: 1) he is a member of a protected class; 2) he applied for and was qualified for a promotion; 3) he was considered for and denied the promotion; and 4) an individual of similar qualifications who was not a member of the protected class received the job at the time his request denied. *Id.*

Mr. Benzaoual may establish a claim of discrimination based on a failure to promote by presenting direct evidence of discrimination or circumstantial evidence that supports an inference of discrimination. *Kline v. Tenn. Valley Author.*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence "proves the existence of a fact without requiring any inferences." *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). Here, because Mr. Benzaoual has not submitted any direct evidence of discrimination, the *McDonnell Douglas* framework applies. *See Wilson v. Brennan*, 213 F. Supp. 3d 934, 944 (S.D. Ohio 2016); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 793, 802 (1973).

Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Id.*; *see also White v. Reynolds*, No. 2:15-CV-2091, 2016 WL 5914204, at *5 (S.D. Ohio Oct. 11, 2016). If the plaintiff does so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *McDonnell Douglas Corp.*, 411 U.S. at 802; *White*, 2016 WL 5914204, at *5. When a defendant articulates such a reason, the burden shifts back to the plaintiff to show the defendant's stated reason is pretextual and that unlawful discrimination was the true reason for the decision. *McDonnell Douglas Corp.*, 411 U.S. at 802; *White*, 2016 WL 5914204, at *5.

OhioHealth argues that Mr. Benzaoual has failed to establish two of the four elements of the prima facie case. First, OhioHealth submits that Mr. Benzaoual has not demonstrated that he was qualified for the Manager Supply Chain position. Second, OhioHealth contends that Mr. Benzaoual has not demonstrated that an individual of similar qualifications from outside the protected class was selected for the Manager Supply Chain position.

*a. Mr. Benzaoual's Qualifications*

To show he was qualified for the Manager Supply Chain position, Mr. Benzaoual must show "credible evidence that his . . . qualifications are at least equivalent to the minimum objective criteria required for employment." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003). To analyze his qualifications, the "inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*; *see also Mohamed v. Air Serv. Corp.*, No. CIV.A. 04-144, 2005 WL 1868791, at *4 (E.D. Ky. Aug. 1, 2005).

According to the Manager Supply Chain job posting, the position required the following minimum qualifications (among others): excellent communication and analytical skills (verbal and written); advanced knowledge of operational functions dealing with supply chains; financial and cost accounting; demonstrated ability to produce process improvement results; management responsibility of a diverse team; proven ability to build and lead teams towards measurable results; ability to manage projects varying in scope; ability to manage cultural diversity; and proven history on effective communication skills. (Benzaoual Dep. Ex. 3, ECF No. 39-1).

Mr. Benzaoual offers some evidence of his qualifications in these areas. His resume indicates that he was a Supervisor, Linen Services for Riverside Methodist Hospital for approximately a year and a half, where he "[s]upervised [e]vening shift operations" and "[c]ompleted several process improvement projects that led to positive financial and quality impacts." (Benzaoual Dep. Ex. 5, ECF No. 39-1). As Acting Manager, Linen Services, a role he served in for less than one year, he "[h]andled complete department operations: production and distribution throughout the hospital and off site ancilliaries." (*Id.*). As Team Leader, Supply & Linen Distribution, Mr. Benzaoual also managed linen and supply distribution operations,

prepared monthly reports, and managed other linen process. (*Id.*). The Court notes, however, that he performed these duties prior to 2011, when he moved to second shift. (Benzaoual Dep. at 56–68). At that time, he "separated [himself] with the operations" and his "main task was to maintain the off shift activities." (*Id.*). From 2011 to 2018, Mr. Benzaoual testified that his primary responsibilities were to answer phones, resolve linen outages, and ensure delivery trucks had a place to park. (*Id.* at 67–68).

Despite demonstrating some of the Manager Supply Chain qualifications, Mr. Benzaoual testified that he was not responsible for hiring, disciplining, or terminating second shift employees, nor for directing their work. (Benzaoual Dep. at 709). Mr. Benzaoual also testified that he was not involved in preparing financial reports, and there is no other evidence that he has experience in or knowledge of financial and cost accounting. (*Id.* at 40, 59–61). There is likewise no evidence that Mr. Benzaoual possessed advanced knowledge of operational functions dealing with supply chains. (*Id.*). Although Mr. Benzaoual has submitted his annual OhioHealth evaluations, their content does not address these qualification shortcomings. Consequently, the Court finds that Mr. Benzaoual has not submitted enough evidence to show he met the minimum qualifications for the Manager Supply Chain position.

### b. Qualifications and Protected Class Status of the Promoted Person

To establish the fourth element of the prima facie case, Mr. Benzaoual must show that an individual outside of his protected classes received the promotion he sought and that "the non-protected person who was ultimately hired for the desired position had similar qualifications." *White*, 429 F.3d at 242.

Mr. Benzaoual has not met his burden of establishing the fourth element. Mr. Benzaoual submits that he is in a protected class for purposes of Title VII due to his religion (Muslim), his

race (Arab), and his national origin (Moroccan). (Benzaoual Dep. at 17, 20, 130). He has not, however, alleged or submitted any evidence that the woman who was hired for the Manager Supply Chain position in January 2019—Elizabeth Theiss—was not Moroccan, Muslim, or Arab. Without such evidence, Mr. Benzaoual cannot prove a prima facie case of discrimination. *El-Zabet v. Nissan North Am.*, 211 F. App'x 460, 465 (6th Cir. 2006) (noting a plaintiff's failure to demonstrate he was treated differently than a similarly situated individual from outside the protected class was fatal to his discrimination claim); *Oliver v. Luke's Dialysis LLC*, 491 F. App'x 586, 588–89 (6th Cir. 2012) (affirming summary judgment where the plaintiff failed to identify any similarly situated employees outside her protected class and therefore failed to establish a prima facie case for discrimination). Accordingly, OhioHealth's Motion for Summary Judgment is **GRANTED**.

## V. CONCLUSION

For the reasons articulated above, the Court **DENIES** Mr. Benzaoual's motion for reconsideration, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's second response in opposition, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's supplemental memorandum, **GRANTS IN PART** OhioHealth's motion to strike Mr. Benzaoual's response to OhioHealth's reply, and **GRANTS** OhioHealth's motion for summary judgment. Accordingly, this case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 1, 2021**